FILED
CLERK, U.S. DISTRICT COURT

JUN - 8 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2017 Grand Jury

17 CR 00350

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 17- |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 157(1): Bankruptcy Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act To Be Done] |
| MICHAEL HENSCHEL, aka "Mickey Henschel," aka "Frank Winston," | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

1.   At all times relevant to this Indictment:

a.   Defendant MICHAEL HENSCHEL, also known as ("aka") "Mickey Henschel," aka "Frank Winston" ("HENSCHEL"), was a resident of Van Nuys, California, in Los Angeles County, within the Central District of California.

b.   Defendant HENSCHEL, co-conspirator No. 1 ("CC-1"), co-conspirator No. 2 ("CC-2"), co-conspirator No. 3 ("CC-3"), co-

conspirator No. 4 ("CC-4"), co-conspirator No. 5 ("CC-5"), co-conspirator no. 6 ("CC-6"), co-conspirator No. 7 ("CC-7"), co-conspirator No. 8 ("CC-8"), and others known and unknown to the Grand Jury, worked for, through, and with a company that defendant HENSCHEL owned and operated under various names, including the name "Valueline," out of offices in Van Nuys, California, in Los Angeles County, within the Central District of California, whose principal business was providing illegal foreclosure- and eviction-delay services.

c.   A bankruptcy case was typically commenced with the filing of a petition for bankruptcy.  A person or entity seeking relief from debts, referred to as the "debtor," could file a voluntary petition for bankruptcy.  Alternatively, creditors could file an involuntary petition for bankruptcy against a debtor.

d.   The filing of a bankruptcy petition triggered what is known as an "automatic stay" against the debtor's creditors, who were immediately prohibited from taking any action on claims they might have had against the debtor and any property owned and possessed by the debtor when the bankruptcy case was commenced unless permission of the bankruptcy court is first obtained.

e.   As a result of the automatic stay, the filing of a bankruptcy petition had the effect of suspending all creditor actions, including foreclosure proceedings commenced by mortgage lenders and eviction actions commenced by purchasers of foreclosed properties, against the debtor and the debtor's assets.

B.   THE OBJECTS OF THE CONSPIRACY

2.   Beginning on a date unknown but no later than in or about October 2010 and continuing through at least in or about July 2013,

1   defendant HENSCHEL, together with CC-1, CC-2, CC-3, CC-4, CC-5, CC-6,

2   CC-7, CC-8, and others known and unknown to the Grand Jury, knowingly

3   combined, conspired, and agreed to commit the following offenses:

4         a.    Bankruptcy fraud, in violation of Title 18, United

5   States Code, Section 157(1); and

6         b.    Wire fraud, in violation of Title 18, United States

7   Code, Section 1343.

8   C.   <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

9       3.   The objects of the conspiracy were carried out, and were to

10  be carried out, in substance, as follows:

11        a.    Defendant HENSCHEL, CC-3, CC-5, CC-6, and other co-

12  conspirators would market foreclosure- and eviction-delay services to

13  homeowners who had defaulted on their mortgages (the "clients").

14        b.    Defendant HENSCHEL, CC-3, CC-5, CC-6, and other co-

15  conspirators would tell the clients that, for a fee, they would

16  assist the clients in delaying foreclosure proceedings that mortgage

17  lenders had initiated against the properties serving as collateral

18  for the clients' defaulted mortgages (the "distressed properties")

19  and the eviction of the clients from the distressed properties after

20  mortgage lenders had sold the distressed properties in trustee sales.

21        c.    Defendant HENSCHEL, CC-1, CC-2, CC-4, CC-8, and other

22  co-conspirators would file and cause others to file bankruptcy

23  petitions in the names of persons and entities other than the

24  clients, including in the names of non-existent people and entities

25  ("fictional debtors"), in order to initiate bankruptcy cases to be

26  used as part of the scheme.

27        d.    As defendant HENSCHEL and his co-conspirators knew,

28  the bankruptcies were fraudulent because they were filed solely to

delay foreclosure and eviction proceedings and not as part of any genuine effort to restructure or eliminate debt, and many were filed in the names of fictional debtors, for whom fictional social security numbers and employer identification numbers were listed in the bankruptcy filings.

Foreclosure Delay

e.    To delay foreclosures, defendant HENSCHEL and other co-conspirators would prepare and cause others to prepare fake grant deeds (the "fake deeds") that purported to convey fractional interests in the distressed properties to the fictional debtors.

f.    Defendant HENSCHEL and other co-conspirators would backdate and cause others to backdate the fake deeds to create the false appearance that the conveyances of fractional interests in the distressed properties had taken place prior to the filing of the bankruptcy petitions.

g.    In reality, as defendant HENSCHEL and other co-conspirators knew, the fake deeds were prepared and backdated solely to create the appearance that the fictional debtors held interests in the distressed properties prior to the filing of bankruptcy petitions when in fact no such interests were ever actually conveyed, and no money or other consideration was ever paid for any such interests.

h.    Defendant HENSCHEL and other co-conspirators would direct the clients to sign the fake deeds, have their signatures notarized, file the fake deeds in county recorders' offices, and return copies of the filed fake deeds to the co-conspirators.

i.    Defendant HENSCHEL and other co-conspirators would send and cause others to send copies of the recorded fake deeds and the bankruptcy petitions to lenders and lender representatives,

1  thereby invoking the protection of the automatic stay of the

2  bankruptcy code, in order to stop foreclosure sales.

3        j.   If a lender obtained relief from the automatic stay

4  and scheduled another foreclosure sale, defendant HENSCHEL and other

5  co-conspirators would cause the client to sign another fake grant

6  deed that again purported to convey a fractional share of the

7  distressed property to a different fictional debtor; record and cause

8  to be recorded the new fake deed; and send a copy of the new recorded

9  fake deed and new bankruptcy petition to the lender and lender

10  representatives, in order to again stop the sale.

11        k.   Defendant HENSCHEL and other co-conspirators would

12  repeat this course of action as long as lenders continued to attempt

13  to foreclose on the distressed properties and the clients continued

14  to pay fees, and would thereby continuously delay the sale of the

15  distressed properties, sometimes for years at a time.

16        l.   If clients requested reversals of the transfers

17  purportedly implemented by the fake deeds in order to clear title to

18  the distressed properties, defendant HENSCHEL and other co-

19  conspirators would sometimes demand that the clients pay fees before

20  they would prepare reconveyance documents purporting to show that the

21  fictional debtors were transferring the fractional interests back to

22  the clients.

23  Eviction Delay

24        m.   To delay evictions, defendant HENSCHEL and his co-

25  conspirators would, among other things, make it appear that fictional

26  debtors were occupying the distressed properties as tenants and would

27  file and cause others to file Prejudgment Claims of Right to

28  Possession and other legal documents in state court in the names of

1    those fictional debtors, invoking the automatic stay of the
2    bankruptcy code to delay eviction proceedings.

3         n.    HENSCHEL and his co-conspirators would also amend
4    existing bankruptcy petitions to add the clients' names as DBAs of
5    existing debtors and then send and cause others to send the amended
6    petitions to County Sheriffs' offices, again invoking the automatic
7    stay of the bankruptcy code to delay eviction.

8         o.    In this way, defendant HENSCHEL and his co-
9    conspirators would interfere with the normal functioning of the state
10   court eviction process, which allowed the clients to stay in
11   properties owned by other people and fraudulently deprived the
12   purchasers of distressed properties of possession and use of those
13   properties.

14   Collection of Fees

15        p.    Defendant HENSCHEL and his co-conspirators would
16   charge the clients fees for the illegal foreclosure- and eviction-
17   delay services, collecting more than $7 million in fees for these
18   services.

19        q.    Defendant HENSCHEL would open and cause others to open
20   bank accounts in CC-7's name and in the name of CC-7's brother in
21   order to try to hide defendant HENSCHEL's involvement in the fraud.

22        r.    Defendant HENSCHEL would direct CC-7 and other co-
23   conspirators to cash large checks made payable to CC-7 and the other
24   co-conspirators, with CC-7 cashing more than $750,000 in checks
25   during the course of the fraud and other co-conspirators cashing
26   additional checks.

27        4.    Among the clients who obtained or tried to obtain
28   foreclosure and eviction delay services from defendant HENSCHEL and

1  his co-conspirators in the course of the conspiracy were the

2  following, who sought those services in connection with the following

3  properties:

| Homeowner / mortgagor | Property address |
| --- | --- |
| D.B. (mother J.C.) | Key Route, Albany, California |
| C.B., D.B. | Beachwood Court, Hayward, California |
| S.C. | Amanda Place, Pleasanton, California |
| C.G. | Donovan Drive, San Leandro, California |
| I.G. | Noble Avenue, Sherman Oaks, California |
| M.I. | North Santa Fe Avenue, Compton, California |
| N.M. | Vineland Avenue, Studio City, California |
| A.N. & P.N. (daughter M.F.) | Fowler Street, Newark, California |
| J.K.S. | Butterfield Drive, Castro Valley, California |
| M.S. | Foster Street, Alameda, California |
| J.W. | Vancouver Common, Fremont, California |

    5.   Among the fraudulent bankruptcies that defendant HENSCHEL

and his co-conspirators filed in the course of the conspiracy were:

| Bankruptcy Name | Date Filed |
| --- | --- |
| In re J.M., 8:12-bk-17281-MW (Bankr. C.D. Cal.) | 6/12/12 |
| In re A.A., 2:12-bk-31732-WB (Bankr. C.D. Cal.) | 6/22/12 |
| In re Dawon Oldham, 2:12-bk-31733-BB (Bankr. C.D. Cal.) | 6/22/12 |
| In re Michael Phat Gieng, 12-19731-TWD (Bankr. W.D. Wash.) | 9/24/12 |
| In re Gerardo Gonzalez, 12-35541-HRT (Bankr. D. Colo.) | 12/19/12 |
| In re Zare Bekerejian, 13-10446-ABC (Bankr. D. Colo.) | 1/14/13 |
| In re Marcus Dwayne, 13-10257-t7 (Bankr. D.N.M.) | 1/30/13 |
| In re George Stevenson, 13-10331-t7 (Bankr. D.N.M.) | 2/6/13 |

1  D.   OVERT ACTS

2       6.   On or about the following dates, in furtherance of the

3  conspiracy and to accomplish its objects, defendant HENSCHEL,

4  together with CC-1, CC-2, CC-3, CC-4, CC-5, CC-6, CC-7, CC-8, and

5  others known and unknown to the Grand Jury, committed and caused

6  others to commit the following overt acts, among others, in the

7  Central District of California and elsewhere:

8       Overt Act No. 1: On or about October 10, 2010, defendant

9  HENSCHEL sent CC-2 an email with instructions regarding foreclosure

10 and eviction delay, with text that read in part: "I will call you

11 Tuesday regarding [client's] eviction case."

12      Overt Act No. 2: On or about October 13, 2010, CC-2 sent

13 defendant HENSCHEL an email regarding foreclosure and eviction delay,

14 with text that read in part: "we need to file Answer for the Second

15 Amended Complaint in [client's] case.  Please let me know what to

16 do."

17      Overt Act No. 3: On or about December 9, 2010, defendant

18 HENSCHEL sent client N.M. an email attaching a fake grant deed to

19 help delay foreclosure on property located on Vineland Avenue in

20 Studio City, California, which was serving as collateral for a

21 mortgage in N.M.'s name.

22      Overt Act No. 4: On or about May 31, 2011, defendant HENSCHEL

23 sent an email to CC-3 regarding fake grant deeds to delay

24 foreclosure, with text that read in part: "Sometimes we record a new

25 deed even when there is not a sale date, as it makes it more

26 difficult for them to set a new date."

27      Overt Act No. 5: On or about August 1, 2011, defendant HENSCHEL

28 sent an email to a client representative with text that read in part:

"I need the names of 2 people that can say they rent a room at
Merridy.  Real people."

Overt Act No. 6: On or about August 26, 2011, CC-4 sent an email
to HENSCHEL attaching a list of eviction files, which included
reference to a property on Merridy Street.

Overt Act No. 7: On or about October 18, 2011, CC-4 sent an
email to CC-3 with text that read in part: "Please call [CC-2] to get
the Deedback.  She is the one who always prepares deedbacks and
reconveyances."

Overt Act No. 8: On or about November 9, 2011, defendant
HENSCHEL sent CC-3 an email attaching a fake grant deed and
instructions for client I.G. on how to record the fake grant deed on
property located on Noble Avenue in Sherman Oaks, California, which
was serving as collateral for a mortgage in I.G.'s name.

Overt Act No. 9: On or about December 6, 2011, defendant
HENSCHEL sent an email to a client representative with instructions
on how to forge signatures on a formal court filing to delay a
client's eviction, with text that read in part: "Attached is the
Notice, along with a signature sample.... have it signed on Page 2,
Steve Lopez [a fictional debtor]."

Overt Act No. 10: On or about December 20, 2011, CC-5 sent an
email to client C.B. giving instruction on how to record a fake grant
deed on property on Beachwood Court in Hayward, California, which was
serving as collateral for a loan in C.B.'s spouse's name.

Overt Act No. 11: On or about April 26, 2012, an unidentified
co-conspirator sent and caused to be sent a notice of a fraudulent
bankruptcy filed in the name of fictional debtor Daryl Lynch and a
corresponding fake grant deed to Quality Loan Servicing Center (a

foreclosing trustee) to delay foreclosure of a property in Albany, California, occupied by client J.C., which was serving as collateral for a mortgage in J.C.'s son's name.

Overt Act No. 12: On or about June 12, 2012, CC-1 filed and caused to be filed, under Title 11 of the United States Code, a fraudulent and unauthorized bankruptcy petition in the name of J.M., an identity theft victim, which was assigned case number 8:12-bk-17281-MW, in the United States Bankruptcy Court for the Central District of California.

Overt Act No. 13: On or about June 22, 2012, an unidentified co-conspirator filed and caused to be filed, under Title 11 of the United States Code, a fraudulent and unauthorized bankruptcy petition in the name of A.A., an identity theft victim, which was assigned case number 2:12-bk-31732-WB, in the United States Bankruptcy Court for the Central District of California.

Overt Act No. 14: On or about June 22, 2012, an unidentified co-conspirator filed and caused to be filed, under Title 11 of the United States Code, a fraudulent bankruptcy petition in the name of Dawon Oldham, a fictional debtor, which was assigned case number 2:12-bk-31733-BB, in the United States Bankruptcy Court for the Central District of California.

Overt Act No. 15: On or about July 20, 2012, defendant HENSCHEL emailed CC-4 the bankruptcy petition filed in the name of identity theft victim J.M.

Overt Act No. 16: On or about September 24, 2012, an unidentified co-conspirator filed and caused to be filed, under Title 11 of the United States Code, a fraudulent bankruptcy petition in the name of Michael Phat Gieng, a fictional debtor, which was assigned

1    case number 12-19731-TWD, in the United States Bankruptcy Court for

2    the Western District of Washington.

3         Overt Act No. 17: On or about September 28, 2012, an

4    unidentified co-conspirator sent and caused to be sent a notice of a

5    fraudulent bankruptcy filed in the name of fictional debtor Michael

6    Phat Gieng and a corresponding fake grant deed to Quality Loan

7    Servicing Center (a foreclosing trustee) to delay foreclosure of a

8    property in Albany, California, occupied by client J.C., which was

9    serving as collateral for a mortgage in J.C.'s son's name.

10        Overt Act No. 18: On or about September 28, 2012, client J.C.,

11   in accordance with defendant HENSCHEL's instructions, sent a recorded

12   fake grant deed to co-conspirators to delay foreclosure of property

13   in Albany, California, which was serving as collateral for a loan in

14   J.C.'s son's name.

15        Overt Act No. 19: On or about October 10, 2012, CC-4 sent

16   HENSCHEL an email with text that read: "Mickey, the current BK

17   petition # is 12-19731-TWD," which was the bankruptcy case number for

18   the bankruptcy filed in the name of fictitious debtor Michael Phat

19   Gieng.

20        Overt Act No. 20: On or about October 11, 2012, CC-6 sent CC-3

21   an email confirming receipt of a fake grant deed prepared for client

22   C.G. to delay foreclosure on property on Donovan Drive in San

23   Leandro, California, which was serving as collateral for a mortgage

24   in C.G.'s name.

25        Overt Act No. 21: On or about October 15, 2012, client C.G., at

26   CC-6's instruction, sent CC-6 an executed document titled

27   "Authorization to Perform," which purported to authorize CC-6 "to

28

conduct and initiate any business matters relevant for the purpose of structuring a Deed of Trust for [C.G.'s] property."

Overt Act No. 22: On or about October 15, 2012, an unidentified co-conspirator sent and caused to be sent a notice of a fraudulent bankruptcy filed in the name of fictional debtor Michael Phat Gieng and a corresponding fake grant deed to Title Trust Deed (a foreclosing trustee) to delay foreclosure of a property on Donovan Drive in San Leandro, California, which was serving as collateral for a mortgage in C.G.'s name.

Overt Act No. 23: On or about October 16, 2012, CC-4 sent client C.G. an email notifying C.G. that the trustee sale of C.G.'s property on Donovan Drive in San Leandro had been delayed from October 15, 2012 to November 15, 2012, and attaching an "invoice regarding the postponement."

Overt Act No. 24: On or about October 22, 2012, CC-3 sent an email to client P.N. (through P.N.'s daughter M.F.) responding to a question regarding whether the foreclosure sale had been stopped with respect to property on Fowler Street in Newark, California, which was serving as collateral for a mortgage in P.N.'s name, with text that read: "It has not because we haven't sent in the documents yet. It's better to wait and send it a day or two before the sale date because if we send it early then they will start working on dismissing it right away."

Overt Act No. 25: On or about October 31, 2012, CC-3 sent an email to CC-6 regarding a question about a client's liability for the loan described in the fake grant deed, and a request to change the description of an irrevocable trust to a revocable trust, with text that read in part: "You can change it to Revocable on the deed.

Doesn't matter [CC-6], you know we remove the lean anytime they ask us to anyway.  The 65K lean has to be there because if the amount is low then the bank can pay it off and foreclose."

Overt Act No. 26: On or about November 15, 2012, CC-7 cashed a check in the amount of $16,000, drawn on a bank account at Bank of America N.A., account ending in 6577, maintained in the name of "The Co Value Line Service Trust," on which CC-7's brother was a signatory (the "Value Line Service Trust Account").

Overt Act No. 27: On or about November 16, 2012, CC-7 cashed a check in the amount of $9,600, drawn on the Value Line Service Trust Account.

Overt Act No. 28: On or about November 20, 2012, CC-3 sent an email to client M.S. giving instructions on how to record a fake grant deed on property on Foster Street in Alameda, California, which was serving as collateral for a mortgage in M.S.'s name.

Overt Act No. 29: On or about November 21, 2012, CC-3 sent an email to client M.S. forwarding a message from defendant HENSCHEL in response to a question regarding the client's liability for the loan described in the fake grant deed, stating: "You are not liable for any amount."

Overt Act No. 30: On or about November 23, 2012, a potential client sent an email to CC-8 with text that read: "Hi called today and asked to call back for [CC-8] since he does foreclosures."

Overt Act No. 31: On or about November 29, 2012, an unidentified co-conspirator sent and caused to be sent a notice of a bankruptcy filing to delay foreclosure of property in Castro Valley, California, which was serving as collateral for a mortgage in client J.K.S.'s name; attached was fabricated documentation that purported to show a

bankruptcy petition filed in the name of debtor Roberta Lopez, which does not correspond to any actual bankruptcy filing.

Overt Act No. 32: On or about November 30, 2012, CC-7 cashed a check in the amount of $9,500, drawn on the Value Line Service Trust Account.

Overt Act No. 33: On or about December 5, 2012, CC-7 cashed a check in the amount of $9,530, drawn on the Value Line Service Trust Account.

Overt Act No. 34: On or about December 17, 2012, CC-6 sent an email to CC-3 regarding releasing a lien on property located on Amanda Place in Pleasanton, California, which was serving as collateral for a mortgage in client S.C.'s name, with text that read: "Urgent that we get Release of Lien immediately!!!"

Overt Act No. 35: On or about December 17, 2012, CC-3 sent defendant HENSCHEL an email regarding CC-6's email about the property in Pleasanton, California, with text that read in part: "We lost his house and the owner wants the release of lien and the BK info.  I told him I can't provide the BK info unless there is an attorney involved and I also told him that I might not be able to get him the release until Friday.  [CC-6] is panicking thinking the owner is going to report us to the District Atty."

Overt Act No. 36: On or about December 19, 2012, an unidentified co-conspirator filed and caused to be filed, under Title 11 of the United States Code, a fraudulent bankruptcy petition in the name of Gerardo Gonzalez, a fictional debtor, which was assigned case number 12-35541-HRT, in the United States Bankruptcy Court for the District of Colorado.

1     Overt Act No. 37: On or about January 4, 2013, an unidentified

2  co-conspirator sent and caused to be sent a notice of a fraudulent

3  bankruptcy filed in the name of fictional debtor Gerardo Gonzalez and

4  a corresponding fake grant deed to Quality Loan Servicing Center (a

5  foreclosing trustee) to delay foreclosure of a property in Albany,

6  California, occupied by client J.C., which was serving as collateral

7  for a mortgage in J.C.'s son's name.

8     Overt Act No. 38: On or about January 14, 2013, an unidentified

9  co-conspirator filed and caused to be filed, under Title 11 of the

10  United States Code, a fraudulent bankruptcy petition in the name of

11  Zare Bekeregian, a fictional debtor, which was assigned case number

12  13-10446-ABC, in the United States Bankruptcy Court for the District

13  of Colorado.

14     Overt Act No. 39: On or about January 30, 2013, an unidentified

15  co-conspirator filed and caused to be filed, under Title 11 of the

16  United States Code, a fraudulent bankruptcy petition in the name of

17  Marcus Dwayne, a fictional debtor, which was assigned case number 13-

18  10257-t7, in the United States Bankruptcy Court for the District of

19  New Mexico.

20     Overt Act No. 40: On or about February 6, 2013, an unidentified

21  co-conspirator filed and caused to be filed, under Title 11 of the

22  United States Code, a fraudulent bankruptcy petition in the name of

23  George Stevenson, a fictional debtor, which was assigned case number

24  13-10331-t7, in the United States Bankruptcy Court for the District

25  of New Mexico.

26     Overt Act No. 41: On or about February 6, 2013, an unidentified

27  co-conspirator sent and caused to be sent a notice of a fraudulent

28  bankruptcy filed in the name of fictional debtor Zare Bekerejian and

a corresponding fake grant deed to Quality Loan Servicing Center (a foreclosing trustee) to delay foreclosure of a property on Key Route Boulevard in Albany, California, occupied by client J.C., which was serving as collateral for a mortgage in J.C.'s son's name.

Overt Act No. 42: On or about February 6, 2013, CC-3 sent emails to client J.W. giving instruction on how to record a fake grant deed on property on Vancouver Common in Fremont, California, which was serving as collateral for a mortgage in J.W.'s name.

Overt Act No. 43: On or about February 14, 2013, CC-4 sent client J.W. an invoice for $750 for foreclosure delay services.

Overt Act No. 44: On or about February 14, 2013, an unidentified co-conspirator sent and caused to be sent a notice of a fraudulent bankruptcy filed in the name of fictional debtor Zare Bekerejian and a corresponding fake grant deed to ATC Assessment Collection (a foreclosing trustee) to delay foreclosure of a property on Vancouver Common in Fremont, California, which was serving as collateral for a mortgage in J.W.'s name.

Overt Act No. 45: On or about February 18, 2013, CC-3 forwarded an email to defendant HENSCHEL from a client representative with a subject line that read in part "He wants money back" and the text of the forwarded email reading in part: "[CC-3]; Bad news we wont be moving forward.  I would like a refund check prorated from 2/19 through 2/28 for not stoping [sic] the foreclosure as you promised. After speaking with two attorney [sic] there is a consensus that (1) The Banks are being defrauded by the delay tactic. (2) I could lose my Real Estate licence [sic].  (3) The bank could sue me for mortgage fraud.  You might want to consider your next Career move."

Overt Act No. 46: On or about February 22, 2013, client J.W., at CC-3's instruction deposited $750 by check into the Value Line Service Trust Account, in payment for delaying foreclosure on property on Vancouver Common in Fremont, California, which was serving as collateral for a mortgage in J.W.'s name.

Overt Act. No. 47: On or about June 4, 2013, CC-4 sent defendant HENSCHEL an email attaching a bankruptcy petition in the name of fictional debtor Michael Phat Gieng, and a fake grant deed filed on property on Noble Avenue in North Hills, California, which was serving as collateral for a mortgage in L.S.R.C.'s name, with text read in part: "Mickey, Here is the BK petition and deed for [client]'s house."

Overt Act No. 48: On or about June 10, 2013, client M.S., at CC-3's instruction, sent confirmation of a deposit of $700 into a Bank of America account ending in 6032, in payment for delaying foreclosure on property on Foster Street in Alameda, California, which was serving as collateral for a mortgage in M.S.'s name.

Overt Act No. 49: On or about July 15, 2013, CC-3 sent defendant HENSCHEL and CC-4 an email with text that read: "When I cancel files I will include the home owners in the email and sometimes tell you to dismiss the bk. I understand that you are not going to but I want to scare them."

COUNTS TWO THROUGH NINE

[18 U.S.C. §§ 157(1), 2]

7.    The Grand Jury hereby repeats and realleges paragraphs 1 and 3 through 6 of this Indictment, as if fully set forth herein.

A.    THE FRAUDULENT SCHEME

8.    Beginning on a date unknown but no later than in or about October 2010 and continuing through at least in or about July 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSCHEL, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and executed a scheme to defraud mortgage lenders and purchasers of foreclosed properties as to material matters.

9.    The fraudulent scheme was carried out, in substance, in the manner and through the means described in paragraphs 1 and 3 through 6 of this Indictment.

B.    BANKRUPTCY FILINGS FOR THE PURPOSE OF EXECUTING THE FRAUDULENT SCHEME

10.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSCHEL, together with others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of executing the fraudulent scheme described above, filed and willfully caused others to file the following petitions under Title 11 of the United States Code:

| COUNT | DATE | ACT |
|-------|------|-----|
| TWO | 6/12/12 | Bankruptcy petition in the name of identity theft victim J.M., assigned case number 8:12-bk-17281-MW, in the Central District of California |

| COUNT | DATE | ACT |
|-------|------|-----|
| THREE | 6/22/12 | Bankruptcy petition in the name of identity theft victim A.A., assigned case number 2:12-bk-31732-WB, in the Central District of California |
| FOUR | 6/22/12 | Bankruptcy petition in the name of Dawon Oldham, a fictional debtor, assigned case number 2:12-bk-31733-BB, in the Central District of California |
| FIVE | 9/24/12 | Bankruptcy petition in the name of debtor Michael Phat Gieng, a fictional debtor, assigned case number 12-19731-TWD, in the Western District of Washington |
| SIX | 12/19/12 | Bankruptcy petition in the name of Gerardo Gonzalez, a fictional debtor, assigned case number 12-35541-HRT, in the District of Colorado |
| SEVEN | 1/14/13 | Bankruptcy petition in the name of Zare Bekerejian, a fictional debtor, assigned case number 13-10446-ABC, in the District of Colorado |
| EIGHT | 1/30/13 | Bankruptcy petition in the name of Marcus Dwayne, a fictional debtor, assigned case number 13-10257-t7, in the District of New Mexico |
| NINE | 2/6/13 | Bankruptcy petition in the name of George Stevenson, a fictional debtor, assigned case number 13-10331-t7, in the District of New Mexico |

COUNTS TEN AND ELEVEN

[18 U.S.C. § 1343]

11.   The Grand Jury hereby repeats and realleges paragraphs 1 and 3 through 6 of this Indictment, as if fully set forth herein.

A.   THE FRAUDULENT SCHEME

12.   Beginning on a date unknown but no later than in or about October 2010 and continuing through at least in or about July 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENSCHEL, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and executed a scheme to defraud homeowner clients, mortgage lenders, and purchasers of foreclosed properties as to material matters, and to obtain money and property from homeowner clients, mortgage lenders, and purchasers of foreclosed properties by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

13.   The fraudulent scheme was carried out, in substance, in the manner and through the means described in paragraphs 1 and 3 through 6 of this Indictment.

B.   USE OF THE WIRES

14.   On or about the dates set forth below, within the Central District of California, and elsewhere, defendant HENSCHEL, for the purpose of executing the above-described scheme to defraud, transmitted and caused to be transmitted, by means of wire and radio communication in interstate and foreign commerce, the following items:

| COUNT | DATE | ACT |
|-------|------|-----|
| TEN | 1/30/13 | Fax transmittal cover sheet and enclosed documents, sent via FAX from Van Nuys, California, to Albuquerque, New Mexico, related to a bankruptcy petition filed in the name of Marcus Dwayne, a fictional debtor, in the District of New Mexico under case number 13-10257-t7 |
| ELEVEN | 2/6/13 | Fax transmittal cover sheet and enclosed documents, sent via FAX from Van Nuys, California, to Albuquerque, New Mexico, related to a bankruptcy petition filed in the name of George Stevenson, a fictional debtor, in the District of New Mexico under case number 13-10331-t7 |

A TRUE BILL

_____/s_____
Foreperson

SANDRA R. BROWN
Acting United States Attorney

Scott Garinger
Deputy Chief, Criminal Division For:

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Major Frauds Section

JILL FEENEY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

KERRY L. QUINN
Assistant United States Attorney
Major Frauds Section